**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| JOHN J. SCACCIA, | : | Case No. 3:18-cv-00418 |
| Plaintiff, | : | District Judge Thomas M. Rose |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| UBER TECHNOLOGIES, INC., et al., | : | |
| Defendants. | : | |

**REPORT AND RECOMMENDATIONS[1]**

# I.  Introduction

Plaintiff John J. Scaccia is a former Uber driver. His connection with Uber—Defendant Uber Technologies, Inc.—allowed him to garner leads for potential passengers via Uber's smartphone application. Defendant Raiser LLC (Raiser) is a wholly-owned subsidiary of Uber. Defendant Jane/John Does are two of Plaintiff's former passengers who alerted Uber to alleged misconduct by Plaintiff. After Uber received the misconduct reports, it blocked Plaintiff's access to its smartphone application and potential-passenger information. This effectively terminated Plaintiff and Uber's working relationship.

Plaintiff brings this case *pro se* asserting claims under Ohio law, including wrongful termination, tortious interference with business, defamation, and others. Three Motions are presently pending: Defendants' Motion to Compel Arbitration and Dismiss

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

the Action (Doc. #5); Plaintiff's Motion to Order Disclosure of Jane/John Does and/or Motion to Remand (Doc. #7); and, Plaintiff's Motion for Oral Argument and Request that, Should the Court be Inclined to Order Arbitration, the Case be Stayed and Not Dismissed (Doc. #14).

The broad issue the parties present is whether the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, requires arbitration of Plaintiff's claims.

## II.   Background

Plaintiff's Complaint alleges specific facts about the events that preceded his termination. It suffices, for present purposes, to note that two of Plaintiff's former passengers twice reported to Uber that he was driving while impaired. On each occasion, once Plaintiff learned of the reports, he went to a local police station where officers observed no indication that he was impaired. (Doc. #2, *PageID* #s 35-36). On each occasion, Plaintiff told Uber that he had not been driving while impaired, and he informed Uber about the officers' observations. Uber, at first, seems to have credited Plaintiff's assertion of sobriety because it allowed him to continue to access Uber's leads on potential passengers. But the second impaired-driving accusation against Plaintiff led Uber to block his access to leads about potential passengers. Uber took this action, thereby ending its relationship with Plaintiff, even though he repeatedly denied driving while impaired.

The crux of the parties' present dispute concerns an arbitration provision in Defendant Raiser Technology Services Agreement (updated on December 11, 2015). (Doc. #5, *PageID* #s 77-97). Uber's current Senior Operations and Logistics Manager,

Andrew Magana, states in his Declaration that Uber requires potential drivers to login to Uber's smartphone application (the Uber App) and "enter into … the 'Technology Services Agreement'… with Raiser …." *Id.* at *PageID* #68, ¶7.

The Raiser Agreement's lengthy Arbitration Provision begins by invoking federal law: "This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ('FAA') and evidences a transaction involving interstate commerce." *Id.* at 93. The Arbitration Provision broadly states that it "applies to any dispute arising out of or related to this Agreement or termination of the Agreement and survives after the Agreement terminates…." *Id.* It continues in this vein:

> Except as it otherwise provides, this Arbitration Provision also applies, without limitation, to all disputes between You and the Company [Raiser] or Uber…, including, but not limited to any disputes arising out of or related to this Agreement and disputes arising out of or related to your relationship with the Company, including termination of the relationship….

*Id.*

The Arbitration Provision also contains detailed opt-out language:

> viii.  <u>Your Right To Opt Out of Arbitration</u>
>
> Arbitration is not a mandatory condition of your contractual employment with the Company. If you do not want to be subject to this Arbitration Provision, you may opt out of this Arbitration Provision by notifying the Company in writing of your desire to opt out of this Arbitration Provision, either by (1) sending, within 30 days of the date this Agreement is executed by you, electronic mail to <u>optout@uber.com</u>, stating your name and intent to opt out of the Arbitration Provision or (2) by sending a letter by U.S. Mail, or by any nationally recognized delivery service…, or by hand delivery to:
>
> [address omitted]
>
> In order to be effective, the letter under option (2) must clearly indicate your intent to opt out of this Arbitration Provision, and must be dated and signed.

> The envelope containing the signed letter must be received (if delivered by hand) or post-marked within 30 days of the date this Agreement is executed by you…. Should you not opt out of this Arbitration Provision within the 30-day period, you and the Company shall be bound by the terms of this Arbitration Provision….

*Id*. at 97. The final paragraph of the Raiser Agreement states, "By clicking 'I accept', you expressly acknowledge that you have read, understood, and taken thoughtful steps to consider the consequences of this Agreement, and that you agree to be by bound by the terms and conditions of the Agreement…." *Id*.

Plaintiff asserts in his sworn Declaration that he "does not recall any agreement to arbitrate." (Doc. #11, *PageID* #138, ¶11). He also explains, "Had I known of an agreement to arbitrate with Uber I would have elected not to participate in it and certainly would not have agreed to the conditions set forth in the agreement after the truth of working with Uber became known…." *Id*. at ¶13.

## III. Discussion

In support of their Motion to Compel Arbitration, Defendants contend that (1) Plaintiff voluntarily agreed to arbitrate his claims, (2) his claims fall within the scope of the Raiser Agreement's Arbitration Provision, (3) the Arbitration Provision is valid and enforceable, (4) the FAA applies to the Arbitration Provision, and (5) the FAA requires the Court to enforce the Arbitration Provision according to its terms.

Plaintiff maintains that his claims are there was no knowing and voluntary agreement to arbitrate, or (alternatively) that Defendants waived any claim to enforce the Arbitration Provision. Plaintiff further argues that his claims are exempt from federal arbitration and that the Arbitration Provision is unconscionable. Plaintiff states,

4

"Discovery should be Ordered so the process can be thoroughly examined and analyzed." (Doc. #11, *PageID* #121).

    A.    **The FAA and Plaintiff's Claims**

Under the FAA, "[a] written agreement to arbitrate disputes arising out of a transaction in interstate commerce 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (quoting in part 9 U.S.C. § 2). The FAA "[m]anifest[s] a 'liberal federal policy favoring arbitration agreements ….'" *Id.* (quoting, in part, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 625, 105 S. Ct. 3346 (1985)). "The FAA was designed to override judicial reluctance to enforce arbitration agreements, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

"[T]he FAA 'is at bottom a policy guaranteeing the enforcement of private contractual arrangements.'" *Id.*; *see Cooper v. MRM Investment Co.,* 367 F.3d 493, 498 (6th Cir. 2004). "Courts … examine the language of the contract in light of the strong federal policy in favor of arbitration. Likewise, any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Stout,* 228 F.3d at 714 (citations omitted).

"Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within

5

the substantive scope of that agreement." *Javitch*, 315 F.3d at 624. "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927 (1983).

Plaintiff's claims in the present case—wrongful termination, tortious interference with business or contractual relationship, interference with employment and future employment/business relations, defamation, and intentional infliction of emotional distress—arise under Ohio common law. These claims fall within the far-reaching language of the Arbitration Provision in the Raiser Agreement—which states, in part: "This Arbitration Provision applies to any dispute arising out of or related to this Agreement or termination of the Agreement and survives after the Agreement terminates…." (Doc. #5, *PageID* #93). The Raiser Agreement repeats itself, "this Arbitration Provision also applies, without limitation, to all disputes between You and the Company (Defendant Raiser] or Uber…, including but not limited to any disputes arising out of or related to the Agreement and disputes arising out of or related to your relationship with the Company, including the termination of the relationship…." *Id*. The broad scope of this language encompasses Plaintiff's claims and, therefore, the parties' "specific dispute falls within the substantive scope…," *Javitch*, 315 F.3d at 624, of the Arbitration Provision in the Raiser Agreement.

Yet Plaintiff maintains that he did not know about the Arbitration Provision and never agreed to arbitrate any claim that he might have in connection with the termination of his working relationship with Uber. This, however, refers to matters within the

6

Arbitration Provision, which selects to mandate arbitration of claims that "include without limitation disputes arising out of or relating to interpretation or application of this Arbitration, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision…." (Doc. #5, *PageID* #93). Such provisions are enforceable:

> Under the Act [FAA], arbitration is a matter of contract, and courts must enforce arbitration contracts according to their term.… [P]arties may agree to have an arbitrator decide not only the merits of a particular dispute but also "gateway" questions of "arbitrability," such as *whether the parties have agreed to arbitrate* or whether their agreement covers a particular controversy.

*Henry Schein, Inc. v. Archer and White Sales, Inc.*, __U.S.__, 139 S.Ct. 524, 529 (2019) (emphasis added) (quoting in part, *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69, 130 S.Ct. 2772, 2777 (2010)) (other citation omitted). By asserting that he did not knowingly agree to the Arbitration Provision, Plaintiff places at issue whether the parties have agreed to arbitration. This gateway issue is subject to arbitration under the terms of the Raiser Agreement's Arbitration Provision. *See id.*; *see also Carey v. Uber Technologies, Inc.*, 1:16-cv-1058, 2017 WL 1133936, at *5 (N.D. Ohio 2017) (Lioi, D.J.); *Fridman v. Uber Technologies, Inc.*, 18-CV-02815, 2019 WL 1385887, at *5 (N.D. Cal. 2019); *Davis v. Uber Technologies, Inc.*, Civil No. 16-6122, 2017 WL 3167807, at *4 (E.D. Pa. 2017).

Along a different line, Plaintiff contends that Defendants waived arbitration by not seeking to arbitrate its dispute with him at the time it terminated their relationship. This contention lacks merit. When Defendants terminated the parties' relationship, they did

not know whether a dispute would arise with Plaintiff over his termination. Defendants were simply not required to initiate arbitration before Plaintiff raised a claim against them.

Thusfar, § 2 of the FAA requires the parties to arbitrate Plaintiff's claims. But § 1 of the FAA is an exclusionary provision that Plaintiff invokes.

### B. FAA Exclusion

"Section 1 of the [FAA] excludes from the Act's coverage 'contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.'" *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109, 121 S.Ct. 1302, 1306 (2001) (quoting in part 9 U.S.C. § 1).

Plaintiff argues that § 1 excludes his claims from mandatory arbitration because his work as an Uber driver placed him in a "class of workers engaged in … interstate commerce." 9 U.S.C. § 1. He asserts that Uber sent him into the stream of interstate commerce by dispatching him to and from Kentucky and Ohio, and to and from airports to pick up "persons and/or property traveling to/from airports servicing persons traveling to other states is interstate commerce…." (Doc. #11, *PageID* #120).

Defendants counter that Plaintiff's work with Uber did not fall within § 1's exclusion from arbitration because he did not move *goods* through interstate commerce.

Defendants' contention prevails given the narrow construction applicable to the exclusions described in § 1:

> [T]he exclusionary clause of § 1 of the Arbitration Act should be narrowly construed to apply to employment contracts of seamen, railroad workers, and any other class of workers actually engaged in the movement of *goods*

8

> in interstate commerce in the same way that seamen and railroad workers are. We believe this interpretation comports with the actual language of the statute and the apparent intent of the Congress which enacted it. The meaning of the phrase "workers engaged in foreign or interstate commerce" is illustrated by the context in which it is used, particularly the two specific examples given, seamen and railroad employees, those being two classes of employees engaged in the movement of *goods* in commerce.

*Asplundh*, 71 F.3d at 600-01 (emphasis added).

When driving with Uber, Plaintiff transported passengers to and fro, sometimes in interstate commerce, but he did not transport goods in interstate commerce. Such work places him outside "any other class of workers engaged in … interstate commerce" described in the FAA's § 1 exclusions from mandatory arbitration. *See id*; *see also Gray v. Uber, Inc.*, 2019 WL 1785094, at *1 (M.D. Fla. 2019); *Singh v. Uber Technologies Inc.*, 235 F.Supp.3d 656, 669 (D.N.J. 2017) ("To date, virtually every circuit having considered the issue has found that the FAA's exclusion only applies to those employees who are actually engaged in the movement of goods, as opposed to the transportation of people, in interstate commerce." (citations omitted)); *Kowalewski v. Samandarov*, 590 F.Supp.2d 477, 484-85 (S.D.N.Y. 2008) ("While 'railroad employees' and 'seamen' undoubtedly sometimes transport people interstate, both of these industries also involve the interstate transportation of physical goods." (footnote omitted)).

Plaintiff finds support for avoiding arbitration in *New Prime Inc. v. Oliviera*, __U.S.__, 139 S.Ct. 532 (2019), which he reads as holding "that the exclusions set forth in … § 1, et seq. apply to all types of contracts of employment, including assertions of independent contractor agreements involving interstate commerce." (Doc. #11, *PageID* #119). *New Prime*, however, addressed the meaning of § 1's phrase "contracts of

employment" at the time Congress enacted it. 139 S.Ct. at 539. *New Prime* did not address the present issue of whether § 1's phrase "any other class of workers" is limited to workers who, like seamen and railroad workers, actually engaged in the movement of goods in interstate commerce. Additionally, because the United States Court of Appeals for the Sixth Circuit has resolved this issue in the affirmative, *Asplundh*, 71 F.3d at 600-01, and because similar results abound in the well-reasoned cases involving Uber cited above, § 1 does not exempt Plaintiff from mandatory arbitration.[2]

Accordingly, the FAA's exclusion provision in § 1 does not apply to Plaintiff's claims.

### C. Remaining Issues

Plaintiff asks that in the event arbitration is mandated under the FAA, the Court stay this case rather than dismiss it.

"The FAA directs the Court to stay an action pending arbitration; however, the Court's ability to dismiss a case is not limited when all issues raised in the complaint are arbitrable." *Belmont Medical Care, LLC v. Community Insurance Co.*, 2019 WL 1676003, at *6 (S.D. Ohio 2019) (citing and parenthetically quoting *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001) ('dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable') (citation omitted); *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000); *Alford v. Dean*

---

[2] Plaintiff's assertion that he moved his passengers' property or goods in interstate commerce goes too far. He provides no legal support the notion that these activities fit within § 1, and there is no plausible, nonconclusory allegation in his Complaint that his passengers were engaged in any kind of commerce by moving their own property (personal luggage and the like) between states.

10

*Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ('The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.'); *Gassner v. Jay Wolfe Toyota*, No. 4:06-CV-1335 CAS, 2007 U.S. Dist. LEXIS 35453, at *3 (E.D. Mo. May 15, 2007) ('Where all issues in a case must be submitted to arbitration, it serves no purpose to retain jurisdiction and stay an action.')). Because Plaintiff's claims, including his gateway claim, are subject to arbitration, dismissal without prejudice, rather than a stay pending arbitration, is warranted. *See id.*; *see also Aqua-Chem, Inc. v. Bariven, S.A.*, 2018 WL 4870603, at *3 (E.D. Tenn. 2018) (and cases cited therein); *Morgan v. United Healthcare Servs.*, 1:12cv676, 2013 WL 1828940, *3-*4 (S.D. Ohio 2013) (Weber, D.J.) ("Most district courts in this circuit agree that the best procedure for enforcing arbitration agreements is to dismiss the court action without prejudice").

Plaintiff also seeks an Order compelling Defendants to disclose the names of the two passengers who reported his alleged misconduct.

The FAA provides arbitrators with the power to compel witnesses to attend hearings: "The arbitrators…, may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record…, which may be deemed material as evidence in the case." 9 U.S.C. § 7. "[I]f any person or persons so summoned to testify shall refuse or neglect to obey…," U.S. District Courts have the power to compel the attendance of such person or persons and to "punish said person or persons for contempt …." *Id.* Because the FAA, § 7, provides arbitrators with such power regarding witnesses and because such power is backed by the

11

contempt authority if this Court, Plaintiff may seek discovery from the arbitrator under § 7.

**IT IS THEREFORE RECOMMENDED THAT**:

1. Defendants' Motion to Compel Arbitration and Dismiss the Action (Doc. #5) be GRANTED, and the case be DISMISSED;

2. Plaintiff's Motion to Order Disclosure of John/Jane Does 1 and 2 and/or Motion to Remand (Doc. #7) be DENIED; and,

3. Plaintiff's Motion for Oral Argument and Request that the Case be Stayed Not Dismissed (Doc. #14) be DENIED.

June 13, 2019 *s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).